**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE 8, JAIME TORRES, JACOB WRIGHT, MOLLY BRANDON, JOHN DOE 5 (a minor, by and through his parent), and JOHN DOE 6 (a minor, by and through his parent) | Civil Action No. |
| Plaintiffs, | COMPLAINT |
| v. | |
| The DEVEREUX FOUNDATION (d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH) and QUALITYHEALTH STAFFING, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

JURISDICTION AND VENUE .......................................................................................... 3

THE PARTIES...................................................................................................................... 4

I.      Plaintiffs ..................................................................................................................... 4

        A.      Plaintiff Jane Doe 8....................................................................................... 4

        B.      Plaintiff Jaime Torres ................................................................................... 4

        C.      Plaintiff Jacob Wright ................................................................................... 4

        D.      Plaintiff Molly Brandon ................................................................................ 5

        E.      Plaintiff John Doe 5 ...................................................................................... 5

        F.      Plaintiff John Doe 6 ...................................................................................... 5

II.     Defendants ................................................................................................................. 6

        A.      The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health).......... 6

        B.      QualityHealth Staffing, LLC ........................................................................ 8

FACTUAL ALLEGATIONS ............................................................................................... 9

I.      Devereux represented that it would provide children with a safe environment. ............. 16

II.     Devereux and its staff members broke patients' and families' trust............................... 17

III.    Devereux failed to take steps to protect the children from abuse. .................................. 24

IV.    Plaintiffs were abused in Devereux facilities................................................................. 29

        A.      Plaintiff Jane Doe 8..................................................................................... 29

        B.      Plaintiff Jaime Torres ................................................................................. 31

        C.      Plaintiff Jacob Wright ................................................................................. 32

        D.      Plaintiff Molly Brandon .............................................................................. 34

        E.      Plaintiff John Doe 5 .................................................................................... 36

        F.      Plaintiff John Doe 6 .................................................................................... 37

VICARIOUS LIABILITY ................................................................................................. 38

CAUSES OF ACTION ...................................................................................................... 40

COUNT I Violation of Title IX (20 U.S.C. §§ 1681, *et seq.*) Creation of Sexually Hostile
      Culture/Heightened Risk of Sexual Harassment..................................................... 40

COUNT II Violation of Title IX (20 U.S.C. §§ 1681, *et seq.*) Deliberate Indifference to
      Prior Sexual Harassment  (Plaintiffs Jane Doe 8, Wright, and Torres Against
      Devereux)............................................................................................................... 46

## TABLE OF CONTENTS
### (continued)

Page

COUNT III NEGLIGENCE ........................................................................... 48

COUNT IV NEGLIGENT HIRING................................................................ 49

COUNT V NEGLIGENT RETENTION ......................................................... 50

COUNT VI NEGLIGENT SUPERVISION ..................................................... 51

COUNT VII GROSS NEGLIGENCE ............................................................ 53

COUNT VIII NEGLIGENT MISREPRESENTATIONS ............................... 55

COUNT IX Violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Plaintiff Jane Doe 8 Against Devereux) ........................ 57

COUNT X Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* (Plaintiff Jane Doe 8 Against Devereux)............................................................... 61

COUNT XI FAILURE TO REPORT CHILD ABUSE (California Child Abuse and Neglect Reporting Act,  Cal. Penal Code §§ 11164-11174.4) (Plaintiff Jane Doe 8 Against Devereux) ...................................................................................... 65

COUNT XII Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq*. (Plaintiff Torres Against Devereux)............................................................................................................ 66

COUNT XIII ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF JANE DOE 8 (Plaintiff Jane Doe 8 Against Devereux) ........................... 68

COUNT XIV ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF TORRES (Plaintiff Torres Against Devereux) ..................................... 70

COUNT XV ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF WRIGHT (Plaintiff Wright Against Devereux) ........................................ 71

COUNT XVI ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF BRANDON (Plaintiff Brandon Against Devereux) .................................. 72

COUNT XVII NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ............................ 73

COUNT XVIII INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ..................... 74

COUNT XIX BREACH OF FIDUCIARY DUTY .................................................... 75

PRAYER FOR RELIEF ................................................................................ 76

DEMAND FOR TRIAL BY JURY .................................................................. 76

## INTRODUCTION

> Child abuse is the gravest and most costly public health issue in the United States today. Eradicating child abuse would reduce the overall rate of depression by more than half, alcoholism by two-thirds, and suicide, IV drug use, and domestic violence by three-quarters. It would also have a dramatic effect on workplace performance and vastly decrease the need for incarceration.[1]

1.      Each year, The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health), along with its staffing company QualityHealth Staffing, LLC (collectively "Devereux"), through 18 facilities with more than 6,500 staff in 11 states, takes on responsibility for protecting thousands of our country's most vulnerable members: children with autism, intellectual and developmental disabilities, and specialty mental health needs, including youth in the child welfare system.[2]

2.      Instead of fulfilling its promise and solemn responsibility to protect these vulnerable youth, Devereux exposed them to predators and abusers. Devereux failed to enact safety measures and other policies to protect children; failed to adequately screen, hire, train, and supervise staff; and failed to fulfill its duties under state and federal law.

3.      As a result of Devereux's misconduct, children in Devereux facilities across the country have reportedly been sexually, physically, or emotionally abused—often by Devereux staff.

4.      In August 2020, the *Philadelphia Inquirer* released a devastating Report detailing decades of sexual, physical, and emotional abuse inflicted upon these especially vulnerable children by Devereux staff members. The Report reveals that "at least 41 children as young as 12,

---

[1] Bessel Van der Kolk, *The Body Keeps the Score* 148 (Viking, 2014) (hereinafter "BKTS").
[2] https://www.devereux.org/site/SPageServer/?pagename=centers (last visited December 27, 2023);
https://web.archive.org/web/20210301153112/https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited December 27, 2023).

and with IQs as low as 50, have been raped or sexually assaulted by Devereux staff members in the last 25 years."

5.      After the Inquirer's August 2020 report was published, an additional 13 former Devereux students came forward with allegations of sexual abuse they experienced at Devereux facilities.[3] These children were as young as 8 years old when they were sexually abused.[4] Twelve of the children were allegedly abused in Pennsylvania Devereux facilities, and one was abused in a Delaware Devereux facility.[5] Seven of those children reportedly complained to Devereux staff or a social worker while the abuse was happening, but their complaints were ignored and the abuse continued.[6]

6.      Plaintiffs bring this lawsuit to hold Devereux accountable for the harm it caused them and to prevent this devastating abuse from happening to any other child in Devereux's care.

7.      Accordingly, Plaintiffs Jane Doe 8, Jaime Torres, Jacob Wright, Molly Brandon, John Doe 5 (a minor, by and through his parent) and John Doe 6 (a minor, by and through his parent) make individual claims for the abuse they suffered.[7]

---

[3] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited December 27, 2023).

[4] *Id.*

[5] *Id*.

[6] *Id.*

[7] A pseudonym has been used in place of Plaintiff Jane Doe 8, John Doe 5, and John Doe 6's real names due to privacy concerns. Plaintiffs Jane Doe 8, John Doe 5, and John Doe 6 may proceed using a pseudonym at this stage of the case because they have a reasonable fear of severe harm if their names are disclosed, based upon the facts alleged and nature of this case which involves sensitive information. *See Doe v. Genesis Healthcare*, No. 21-551, 2021 U.S. Dist. LEXIS 78205 (E.D. Pa. Apr. 23, 2021) (endorsing "balancing test to determine if the plaintiff's reasonable fear of severe harm outweighs the public's interest in open litigation" when considering right of litigant to proceed anonymously) (citations omitted). In the related cases of *Jines v. Devereux*, No. 2:21-cv-00346 (E.D. Pa.) and *Thomas v. Devereux*, No. 2:22-cv-02166-AB (E.D. Pa.),

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs allege claims arising under the laws of the United States, including 20 U.S.C. § 1681.

9.      This Court also has subject matter jurisdiction over claims brought by Plaintiffs Jane Doe 8, Torres, Wright, Brandon, and John Doe 5, based on the diversity of the parties pursuant to 28 U.S.C. § 1332. Defendants Devereux and QualityHealth are citizens of the state of Pennsylvania, where they are headquartered, incorporated, and operate their principal places of business. Plaintiff Jane Doe 8 is a citizen of California, Plaintiff Torres is a citizen of New York, Plaintiff Wright is a citizen of Indiana, Plaintiff Brandon is a citizen of Illinois, and Plaintiff John Doe 5 is a citizen of Arizona. The amount in controversy, without interest and costs, exceeds $75,000.

10.      This Court has personal jurisdiction over Defendant the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) because its national headquarters is located at 444 Devereux Drive, Villanova, Pennsylvania 19085. Devereux has continuous and systematic contacts with the state of Pennsylvania such that it is essentially "at home" in the state. Devereux was founded in Philadelphia, and its headquarters have remained in the state of Pennsylvania since it was granted its nonprofit charter in 1938. Devereux's CEO and Senior Leadership Team operate out of its Pennsylvania headquarters. Defendant also operates approximately 90 Devereux facilities in northeast and southeast Pennsylvania.[8]

---

Plaintiffs who used pseudonyms included Jane Does 1-7 and John Does 1-4. This Complaint follows that pattern by picking up the pseudonyms with "Jane Doe 8", "John Doe 5" and "John Doe 6."

[8] https://www.devereux.org/site/SPageServer/?pagename=pa_about (last visited December 27, 2023).

11.     Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

## THE PARTIES

### I.     Plaintiffs

#### A.     Plaintiff Jane Doe 8

12.     Plaintiff Jane Doe 8 is a citizen of the state of California and currently resides in Los Angeles, California.

13.     Plaintiff Jane Doe 8 was a patient and student at Devereux in Westminster, Colorado and San Diego, California when she was approximately 15 to 17 years old, in or about 2003 to 2005. Plaintiff received educational services while in Devereux's care.

#### B.     Plaintiff Jaime Torres

14.     Plaintiff Jaime Torres is a citizen of the state of New York and currently resides in the Bronx, New York.

15.     Plaintiff Torres was a patient and student at Devereux in West Chester, Pennsylvania when he was approximately 11 years old, from in or about 2007 to 2009. Plaintiff Torres received educational services while in Devereux's care.

#### C.     Plaintiff Jacob Wright

16.     Plaintiff Jacob Wright is a citizen of the state of Indiana and currently resides in Indianapolis, Indiana.

17.     Plaintiff Wright was a patient and student at Devereux in Houston, Texas when he was approximately 16 to 18 years old, from in or about 2014 to early 2016. Plaintiff Wright received educational services while in Devereux's care.

### D.    **Plaintiff Molly Brandon**

18.    Plaintiff Brandon is a citizen of the state of Illinois, and currently resides in Naperville, Illinois.

19.    Plaintiff Brandon was a patient and student at Devereux in Westminster, Colorado when she was approximately 14 years old, beginning on or about April 2018 to December 2018. Plaintiff Brandon received educational services while in Devereux's care.

### E.    **Plaintiff John Doe 5**

20.    Plaintiff John Doe 5 is a citizen of the state of Arizona, and currently resides in Sierra Vista, Arizona.

21.    Plaintiff John Doe 5 was a patient and student at Devereux in Scottsdale, Arizona when he was approximately 14 years old, beginning on or about February 2021 to July 1, 2023. Plaintiff John Doe 5 received educational services while in Devereux's care.

### F.    **Plaintiff John Doe 6**

22.    Plaintiff John Doe 6 is a citizen of the Commonwealth of Pennsylvania, and currently resides in Mohnton, Pennsylvania.

23.    Plaintiff John Doe 6 was a patient and student at Devereux's Glenmoore, Pennsylvania facility when he was approximately 11 years old, beginning on or about May 18, 2022. Plaintiff John Doe 6 received educational services while in Devereux's care.

## II.    Defendants

### A.    The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health)

24.    The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) is a private behavioral health organization that operates 18 campuses in 11 states,[9] annually treating more than 25,000 children and young adults with advanced behavioral, intellectual, developmental, and mental health needs. Included among Devereux's facilities and programs are residential treatment centers, psychiatric hospitals, group homes, supported living communities, schools, special education centers, and outpatient programs. Devereux's national headquarters is located at 444 Devereux Drive, Villanova, Pennsylvania 19085.

25.    The Devereux Foundation's leadership is comprised of institutional chief officers, referred to as the Senior Leadership Team, who oversee organization-wide issues impacting Devereux campuses across the nation. Devereux's centralized decision-making is reflected in this team. In addition to Devereux's CEO, included among Devereux's Senior Leadership Team are:

> a.    A Chief Financial Officer and Operating Vice President, who is responsible for setting nationwide financial strategies and information technology efforts, and who manages "all facility-related matters" for all nationwide Devereux centers. This officer also serves as the chief executive officer of Devereux's staffing company, QualityHealth Staffing, LLC.
>
> b.    A Chief Operating Officer responsible for "all operational aspects of the organization's national network."

---

[9] Facilities are located in AZ, CA, CT, FL, GA, MA, NJ, NY, PA, RI, and TX. *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited December 27, 2023).

      c.     A Senior Vice President and Chief Strategy Officer, who is tasked with "developing, communicating, executing and sustaining strategic initiatives across the organization that are aligned with Devereux's mission and core values."

      d.     A Senior Vice President of People Operations, who develops nationwide employee-related initiatives and is "responsible for innovation in the following areas: talent acquisition, engagement and retention, employee development, and total rewards, along with further strengthening Devereux's culture and employment environment."

26.     Upon information and belief, at all times Devereux has been solely responsible for setting and enforcing the policies and procedures governing patient safety and treatment at all Devereux facilities, as well as solely responsible for hiring, supervision, and disciplinary decisions concerning employees of Devereux facilities.

27.     Devereux regularly receives state and federal funding. Several examples include: funding from the Florida legislature to expand Devereux Florida's Commercial Sexual Exploitation of Children Program,[10] funding from "a combination of contracts and private foundation and government grants, including the U.S. Department of Education, Office of Special Education Programs" for Devereux's Center for Effective Schools (a non-profit research and training center which is a division of Devereux Institute of Clinical and Professional Training and Research),[11] grants from the Pennsylvania Department of Education to develop programs for

---

[10] https://www.news-journalonline.com/story/news/2020/10/06/devereux-florida-receives-funding-expand-child-trafficking-program/5852153002/ (last visited December 27, 2023).
[11] https://www.devereux.org/site/SPageServer/?pagename=ces_our_approach (last visited June 2, 2022).

Devereux CARES, which has been licensed as an "Approved Private School,"[12] and a $40.2 million contract from the U.S. Office of Refugee Resettlement to house migrant youth at Devereux facilities in five states.[13]

### B.    QualityHealth Staffing, LLC

28.    QualityHealth Staffing, LLC, a Devereux subsidiary, is a behavioral health staffing company which was formed in 2018 by Devereux and PeopleShare, Inc. QualityHealth is headquartered in King of Prussia, Pennsylvania.

29.    In April 2018, Devereux's newly-appointed President and CEO, Carl E. Clark II, announced an organizational redesign effort and expansion of its leadership team. The first phase of this redesign began in part with the launch of QualityHealth.[14]

30.    QualityHealth was formed to address the challenges related to recruiting and retaining individuals to work in the field of behavioral health. By providing "temporary, temporary-to-hire, and direct hire staffing assistance to organizations who find it a challenge to fulfill roles in a timely manner and who experience difficulty in keeping up with the constant changes in employment regulation," QualityHealth aims to allow organizations to "focus on their mission of helping others, rather than spending time on staffing and employment issues."[15]

31.    Robert C. Dunne, Devereux's Senior VP and Chief Financial Officer, serves as CEO of QualityHealth.

---

[12] https://www.devereux.org/site/SPageServer/?pagename=penn_devereux_cares_services (last visited December 27, 2023).

[13] https://billypenn.com/2020/08/26/devereux-abuse-migrant-children-detain-federal-contract-devon/ (last visited December 27, 2023). While this contract was still active as of August 2020, the *Inquirer* reported the contract abandoned as of October 2020).

[14] https://www.devereux.org/site/SPageServer/?pagename=redesign_2018 (last visited December 27, 2023).

[15] https://web.archive.org/web/20211027161547/https://www.qhstaffing.com/about-us/ (last visited December 27, 2023).

32.     At all times relevant herein, QualityHealth has been and has acted as an agent of the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) and subject to its control. References to "Devereux" in this Complaint refer to both Defendants.

## FACTUAL ALLEGATIONS

33.     Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Devereux programs. Across its 18 campuses in 11 states, Devereux offers hundreds of clinical, therapeutic, educational and employment programs for children with special needs and their families. Some youth and families receive less-intensive services from Devereux such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Devereux's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, an intensive residential treatment program for children who have experienced commercial sexual exploitation, and psychiatric specialty hospitals.[16]

34.     Many parents send their children to a Devereux program because Devereux holds itself out as having expertise in supporting children with disabilities.[17] For many foster youth, their placement in a Devereux facility was the result of a series of decisions in the child welfare

---

[16] https://www.devereux.org/site/SPageServer/?pagename=centers (last visited December 27, 2023).

[17] https://web.archive.org/web/20210307054101/https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited December 27, 2023).

system.[18] Devereux offers several programs specifically tailored for youth who are under the custody of the state due to parental abuse or neglect.[19]

35.     Devereux CEO Carl Clark has admitted that, "Most of the kids we care for have been traumatized in their life outside of Devereux and the worst possible thing is to have that occur while they're in a therapeutic environment."[20]

36.     For the children who were abused at a Devereux facility, it was almost impossible to get help or stop the abuse because Devereux reportedly limited the contact many of them had with the outside world.[21]

37.     Nor was there any clear and safe mechanism by which victims could report abuse within Devereux; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.[22]

---

[18] Barbara Laker & Wendy Ruderman, *Philly to remove 53 kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited December 27, 2023).
[19] https://web.archive.org/web/20210307054101/https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited December 27, 2023).
[20] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).
[21] *Id.*
[22] *Id.*

38.     Many of the children who were abused at Devereux were vulnerable, intellectually disabled, and already fleeing from abuse. Children with an IQ score below 70 are considered intellectually disabled.[23] Devereux is accused of abusing children with IQs as low as 50.[24]

39.     Devereux staff members also took advantage of children who had already been victims of sexual abuse and were at Devereux to seek healing.[25] As reported by the *Philadelphia Inquirer*, "A 15-year-old girl in a Devereux Florida program designed for sex-trafficking victims said she was raped twice by a staff member in 2017."[26] Staff took advantage of these victims' vulnerability and emotional trauma from past abuse. When these students were looking for adults whom they could trust and who made them feel safe, they were instead horrifically exploited.[27]

40.     The power differential between children with physical, emotional and/or intellectual disabilities, on the one hand, and behavioral health staff on the other is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or

---

[23] MENTAL DISORDERS AND DISABILITIES AMONG LOW-INCOME CHILDREN 169 (Thomas F. Boat & Joel T. Wu eds., The National Academies Press 2015), https://www.ncbi.nlm.nih.gov/books/NBK332882/pdf/Bookshelf_NBK332882.pdf (last visited December 27, 20233).
[24] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).
[25] *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited December 27, 2023).
[26] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).
[27] *Id.*

residential treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene.[28]

41.     As reported by the *Philadelphia Inquirer,* Devereux staff have been accused of grooming children whom they abused; for example, they would offer children food,[29] which was at other times withheld from children as a form of punishment. In describing one 43-year-old staff member's abuse of a girl "on the cusp of 15," the *Philadelphia Inquirer* reported, "She was flattered when he brought her gifts—an MP3 player, a necklace, a cell phone. He told her never to include his name in text messages—just his initials. They exchanged dozens of love letters."[30] The *Philadelphia Inquirer* further reported, "Instead of rigorously investigating red flags, Devereux repeatedly failed to identify clear signs that a staffer may be grooming or sexually abusing a child, reporters found. The abuse often continued—or even escalated."[31]

42.     Despite Defendant's awareness of decades of systematic sexual and physical abuse of children in its care, Devereux has failed to enact appropriate uniform national and system-wide protocols and policies to ensure the safety of its youth.[32] Devereux acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train

---

[28] https://www.childwelfare.gov/topics/can/factors/ (last visited December 27, 2023).

[29] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited December 27, 2023).

[30] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

[31] *Id.*

[32] *Id.*

employees, failing to report known abuse of youth in Devereux facilities, and ignoring and covering up complaints alleged against it regarding child abuse.[33]

43.    Devereux has admitted that it was aware of repeated incidents of abuse within its programs, as stated in the CEO's public response to the *Philadelphia Inquirer* Report.[34] Despite this keen awareness of decades of systematic sexual and physical abuse of children in its care, Devereux has failed to enact sufficient measures to ensure the safety of their youth. For example, after a Devereux staff member raped a 15-year-old girl at Devereux Georgia in 2012, the company created a seven-page document that identified risk reduction strategies it planned to implement, including training staff on sexual reactivity, developed a training video regarding supervision lapses leading to sexual assaults, and adopted the "Diana Screen" program to evaluate new employees. But when the victim sued Devereux, the vice president of operations/executive director of the Georgia campus testified at a jury trial, according to a news source, that she was unaware of new staff trainings regarding sexual reactivity and had no knowledge of training videos about supervision lapses.[35] Reportedly, she also testified at the jury trial that Devereux declined to adopt the Diana Screen method, which cost less than $30 to administer.[36]

---

[33] *Id.*

[34] "Message from President and CEO Carl E. Clark II: Devereux's Response to Issues of Resident Safety, (https://web.archive.org/web/20210616231654/https://www.devereux.org/site/SPageServer/?pagename=response_to_safety (last visited December 27, 2023).

[35] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

[36] *Id.*

44. Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.[37]

45. The term "Institutional Betrayal" refers to wrongdoings perpetrated by an institution upon individuals dependent on that institution, including failure to prevent or respond supportively to wrongdoings by individuals (e.g., physical, emotional, and sexual abuse) committed within the context of the institution.[38]

46. Indeed, Devereux's culture of indifference to the safety and well-being of its patients has caused abuse and sexual violence to flourish at Devereux for decades.[39] This toxic culture continues to thrive to this day,[40] even affecting staff. Employees and former employees have posted reviews on Glassdoor.com, including a former Special Education Teacher who rated Devereux two out of five stars, complaining on December 14, 2019 about the "violent" environment and "minimal accountability," including the fact that "[m]ale staff are heavily relied upon to deescalate with minimal support from management. If staff aren't following expectations there are no consequences."[41]

---

[37] *Id.*

[38] Jennifer J. Freyd, *Institutional Betrayal and Institutional Courage*, https://dynamic.uoregon.edu/jjf/institutionalbetrayal/ (last visited December 27, 2023); *see also* Carly Parnitzke Smith & Jennifer J. Freyd, *Institutional Betrayal*, 69 AM. PSYCH. ASSOC. 575 (2014) (available at: https://pages.uoregon.edu/dynamic/jjf/articles/sf2014.pdf (last visited December 27, 2023)).

[39] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

[40] *Id.*

[41] *See* Exhibit 1 hereto.

47.     Another former employee who worked at Devereux as a Licensed Practical Nurse

gave Devereux one out of five stars as an employer on May 29, 2018, and reported that:

> Devereux continues to put themselves out there as such a carding
> foundation for their clients . . . it's a cut throat intimidating, unsafe
> environment . . . very high turnover rate because they will overwork
> you, put you in unsafe situations no matter how much training they
> give you, when something goes wrong it's your fault no matter what
> happened . . . there isn't enough staff to take care of their clients
> properly and the nursing department who are supposed to be
> supportive of you and help take care of the clients treat the site
> nurses like garbage. . . stay away and protect your license and your
> back . . . run, don't walk away![42]

48.     A former DCP at a Devereux facility in Rutland, Massachusetts gave Devereux one

of five stars as an employer, and reported in 2018 that:

> Frontline staff are taken advantage of, put in dangerous situations
> and penalized for speaking up. Work is very tiring, often resulting
> in injuries and culture is that it's frowned upon and sometimes
> discipline to use sick time [sic]. Leadership changes every week.
> They are good at making things look good but scratch beneath the
> surface and a lot of very concerning stuff going on with kids and
> staff. I was fired for calling out sick when I didn't have enough sick
> time. So much for 'caring' for people. Staff care way more about the
> kids than management and leadership. They prioritize profit and
> saving dollars. Kids placed inappropriately just to fill beds.
>
> **Advice to Management**
>
> Consider having some integrity, for the kids if not anything else.[43]

49.     These failures, acts, and egregious omissions created a highly dangerous risk of

physical, emotional, and sexual abuse for any child placed in a Devereux program or facility across

the nation.[44] This pervasive culture of abuse allowed perpetrators access and opportunity to abuse

---

[42] *See* Exhibit 2 hereto.
[43] *See* Exhibit 3 hereto.
[44] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

highly vulnerable children and young adults, and gave them the impunity to act without the risk of detection or punishment.[45]

50.     Children arrive at Devereux facilities seeking treatment, healing, and belonging. For decades, Devereux has abused the trust that families have placed in it by allowing a culture of abuse, exploitation, and trauma.[46]

**I.     Devereux represented that it would provide children with a safe environment.**

51.     Devereux boasts that it "changes lives – by unlocking and nurturing human potential for people living with emotional, behavioral or cognitive differences."[47] Devereux promised student learners compassion, knowledge, collaboration, dedication, learning, and progress.[48] Devereux provided hope to children who had mental health issues—along with their parents—touting itself as "one of the nation's largest nonprofit organizations providing services, insight and leadership in the evolving field of behavioral healthcare" with "unique approach [that] combines evidence-based interventions with compassionate family engagement.[49]

52.     Children and their parents also trusted that patients would be kept safe based on Devereux's claims that "the safety and well-being of the children, adolescents and adults entrusted to our care is of the utmost importance."[50] Devereux advertises that it has a "robust and comprehensive screening process" for potential Devereux employees, and that its employees have

---

[45] *Id*

[46] *Id.*

[47] *Mission, Values and Commitment to Service*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=Mission (last visited December 27, 2023).

[48] *Id.*

[49] *About Devereux Advanced Behavioral Health*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=about (last visited December 27, 2023).

[50] *Our Commitment to Safety*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=safety_and_security (last visited December 27, 2023).

a "commitment to treating and supporting our individuals through patience, compassion and the highest quality clinical care and treatment in the field."[51]

## II.    **Devereux and its staff members broke patients' and families' trust.**

53.    Following the *Inquirer*'s reporting of abuse at Devereux facilities, on September 24, 2020, the City of Philadelphia announced that all youth would be removed from Philadelphia-area residential care facilities operated by Devereux.[52]

54.    Allegations of abuse at Devereux's facilities include:

    a.    As reported by the *Philadelphia Inquirer*, "Altogether, police said 16 girls had been sexually abused by staff at a Devereux facility located in Deerhaven, New Jersey, between 1996 and 1999."[53] In a 1997 instance, the *Philadelphia Inquirer* reported, "a supervisor was walking a 13-year-old to the nurse's station when his walkie-talkie crackled, and the girl began to cry. The voice on the supervisor's radio belonged to a 30-year-old staff member. He had molested her, the girl said."[54]

    b.    As reported by the *Philadelphia Inquirer*, "In 2000, a 14-year-old at Devereux's Malvern, Pennsylvania campus confided to a male staffer that she'd been abused by a relative; that DSP began molesting her and leaving

---

[51] *What it Takes to Become a Devereux Employee*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=what_it_takes (last visited December 27, 2023).

[52] Department of Human Services, Department of Behavioral Health and Intellectual Disability Services, and Office of the Mayor, *DHS and CBH to Remove Philadelphia Children from Devereux Facilities*, CITY OF PHILADELPHIA, https://www.phila.gov/2020-09-24-dhs-and-cbh-to-remove-philadelphia-children-from-devereux-facilities/ (last visited December 27, 2023).

[53] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

[54] *Id.*

used condoms on her windowsill, [the victim] said in an interview: 'I told them it was him, but they never made a report, ever.'"[55]

c.    In 2001, as reported by the *Philadelphia Inquirer*, a Devereux staff member allegedly raped a 15-year-old girl in a staff room when she was half-asleep and heavily medicated at the campus in Malvern, Pennsylvania.[56] She was able to call 911.[57] Devereux staff allegedly promised her father that this would never happen again.[58] Two weeks later another staff member allegedly raped her in the same staff room.[59] The staff member was high at the time and Devereux was allegedly aware that he had a drug problem.[60] The *Philadelphia Inquirer* reported that in a letter from prison, the staff member said, "My employer was aware of my drug problem and was in the process of getting me help."[61] The staff member impregnated his victim, who was then further traumatized by her abortion.[62] Many years later she still feels that she does not deserve to have children.[63] She considers the year she was raped at Devereux to be the year that she died.[64]

---

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*; *see also* BKTS at 143 ("Adults who had been abused as children often had trouble concentrating, complained of always being on edge, and were filled with self-loathing. They had enormous trouble negotiating intimate relationships, often veering from indiscriminate, high-risk, and unsatisfying sexual involvements to total sexual shutdown. They also had large gaps in their memories, often engaged in self-destructive behaviors, and had a host of medical problems.").

d.    In 2012, another Devereux Staff member orally raped a girl through her bedroom window twice in one night in a Devereux Georgia facility.[65] According to the *Philadelphia Inquirer*, a jury returned a verdict in favor of the victim with $50 million dollars in punitive damages.[66]

e.    In around 2014, a Devereux staff member and "married father with a degree in theology" sexually abused a girl "on the cusp of 15" at Devereux's Malvern, Pennsylvania facility. In particular, the staff member groomed his victim, including by exchanging "love letters" of which other Devereux staff members were aware,[67] protecting the victim from the employee when they found a love letter. Further, a Devereux manager required the victim to apologize to the staff member and told her not to write more letters to him because that "could get him in trouble."[68] The *Philadelphia Inquirer* further reported, "A month after [the victim] was told to apologize to [the staff member], she was home for Thanksgiving when the staffer asked her to send him naked photographs of herself."[69] On her next home pass, the staff member told the victim to meet him in Southwest Philadelphia. He took her shopping, buying her clothes and sneakers. He then drove her to an alley and sexually assaulted her in his car before he dropped her off at a bus

---

[65] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

station to find her way home."[70] The staff member continued to abuse the victim when she returned to Devereux, where he was alone with her almost every day.[71] The victim's roommate told her therapist what was going on, and Devereux staff members found a hidden cell phone with "naked photos and explicit messages between the two."[72] "A county jury convicted [the staff member] on charges of institutional sexual assault, unlawful contact with a minor, sexual abuse of children and corruption of minors after trial in September, 2016."[73,74]

f.   According to a complaint filed in 2020, there were 13 more victims of sexual, physical, and verbal abuse in Pennsylvania in addition to the 41 reported by the *Philadelphia Inquirer* who were abused from 2004-2014.[75] The victims were as young as eight years old.[76] Several victims told Devereux staff members of their abuse, but Devereux did not act to protect them.[77]

---

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] Matt Miller, *School staffer who had sex with 16-year-old student must stay in prison, Pa. court rules*, PENNLIVE.COM, https://www.pennlive.com/news/2018/07/school_counselor_who_has_sex_w.html (last visited December 27, 2023).

[74] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

[75] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited December 27, 2023).

[76] *Id.*

[77] *Id.*

g.   In 2016, a Devereux staff member in Viera, Florida faced child abuse charges for hitting and elbowing a child in the face multiple times, Florida Today reported.[78]

h.   In 2017, a Devereux staff member was accused of raping a 15-year-old victim of child sex trafficking at Devereux's Viera, Florida facility.[79] The victim had previously reported this staff member's increasing sexual misconduct towards her, but Devereux staff members dismissed her complaints.[80] After the victim told a nurse that a Devereux staff member had raped her, Devereux staff brought her in to the campus director's office and told the victim she was probably just having a flashback from her previous sexual abuse.[81] After being re-traumatized at Devereux, she was again sex-trafficked.[82] The Devereux staff member whom the student accused of raping her on campus came and found her through her sex trafficking name, and allegedly sexually abused her once again.[83] As the *Philadelphia Inquirer* investigation reported, "At 1:20 a.m., local police pulled the staff member over for driving with his headlights off. Seeing a young, disoriented girl in the passenger seat, officers asked to search his

---

[78] Rick Neale, *Devereux Viera staffer charged with striking girl, 14*, FLORIDA TODAY, https://www.floridatoday.com/story/news/2016/11/05/devereux-viera-staffer-charged-striking-girl-14/93343094/ (last visited December 27, 2023).

[79] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.*

cell phone. They found a video that the staff member had just recorded, of him sexually abusing the victim. He was charged with lewd and lascivious battery on a child. He pleaded guilty to a lesser charge of interference with custody."[84]

i.  In 2018, at the Devereux Kanner Center in Pennsylvania, an employee was accused of beating children on multiple occasions, and two co-workers were accused of not reporting the incidents as required by law.[85] Allegedly, in one instance, a "27-year-old [staff member] threw a 16-year-old to the ground and struck the victim with her knees multiple times, causing the victim to suffer a broken arm."[86]

j.  In 2018, a 16-year-old boy with autism and developmental delays was reportedly sexually assaulted by Devereux Staff at the Brandywine facility,[87] located in Glenmoore, Pennsylvania. The boy spent most of his childhood in therapy learning how to do things like grip buttons and zippers. One day, he fled the Glenmoore facility while his abuser at Devereux chased him in a van. He was able to run to his program supervisor's office. He counted backwards, a technique he had learned to calm himself, and told the supervisor that a Devereux staff member had been sexually assaulting

---

[84] *Id.*
[85] *3 Employees At Developmental Challenge Facility Accused of Beating Teen, Adult Clients,* CBS PHILLY, https://philadelphia.cbslocal.com/2018/11/28/devereux-kanner-center-staff-members-accused-of-beating-teen-adult-clients/ (last visited December 27, 2023).
[86] *Id.*
[87] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

him and another 14-year-old child, who he saw as his "little brother." The boy tried to kill himself several times since his abuse at Devereux.[88] As reported by the *Philadelphia Inquirer*, the boy's abuser was sentenced to eight years in prison for abusing him and two other 14-year-old children.[89]

k.     As reported by the *Philadelphia Inquirer,* in 2018 and 2019, a Devereux staff member at an Arizona facility sexually abused three girls in their bedrooms and in the laundry room.[90] ABC15, a local Phoenix, Arizona news station reported that the former Devereux staff member was being held on "multiple charges of aggravated assault, sexual abuse and sexual conduct with a minor."[91]

l.     As reported by the *Philadelphia Inquirer,* a Devereux staff member was charged with sexually abusing four children at a facility in Texas in 2019.[92] One of the children was 12 years old.[93] Staff also allegedly threatened to beat up a 16-year-old girl if she told anyone about the abuse.[94] KPRC 2, a

---

[88] *Id*.
[89] *Id.*
[90] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).
[91] Joe Enea, *Behavioral health worker accused of sexually abusing young female patients in Phoenix*, ABC15 ARIZONA, https://www.abc15.com/news/crime/pd-behavioral-health-worker-accused-of-sexually-abusing-young-female-patients-in-phoenix (last visited December 27, 2023).
[92] Lisa Gartner & Barbara Laker*, At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).
[93] *Id.*
[94] *Id.*

local Houston, TX news station, reported that the former Devereux staff member was being held "on two counts of sexual assault of a child, two counts of aggravated sexual assault of a child and two counts of indecency with a child involving sexual contact."[95]

m.    Then, in 2020, *Florida Today* reported that two Devereux employees were arrested for severely beating a child.[96] According to *Florida Today,* "Brevard County Sheriff's Office investigators said one employee at the residential behavioral health center in Viera held down a child with his knee while repeatedly hitting him as another employee attempted to obstruct the view of security cameras."[97] A medical examination revealed that "the boy was covered in abrasions and bruises after the beating."[98]

**III.    Devereux failed to take steps to protect the children from abuse.**

55.    Devereux's centralized decision-making structure means rules, policies, procedures promulgated by the Senior Leadership Team govern the administration of all Devereux facilities nationwide.

56.    Devereux's failure to enact adequate policies to protect the children in its care, and its failure to adequately screen, hire, train, and supervise staff, caused harm across Defendant's facilities.

---

[95] Bill Barajas, *Mental health worker faces slew of charges after being accused of sexually assaulting 4 children*, CLICK2HOUSTON.COM, https://www.click2houston.com/news/local/2019/12/20/mental-health-worker-faces-slew-of-charges-after-being-accused-of-sexually-assaulting-4-children/ (last visited December 27, 2023).
[96] Tyler Vazquez, *Two Devereux employees arrested; two others fired in child abuse case*, FLORIDA TODAY, https://www.floridatoday.com/story/news/crime/2020/03/11/two-devereux-employees-arrested-two-others-fired-child-abuse-case/5022529002/ (last visited December 27, 2023).
[97] *Id.*
[98] *Id.*

57.     Even Devereux's employees have observed the issues that its insufficient policies and failures have caused. One current employee, a Direct Support Professional, gave Devereux one out of five stars as an employer on Glassdoor.com on December 14, 2019, posting the following review:

> There is absolutely no supportive infrastructure here, while the staff work with kids who are aggressive, angry, and unpredictable. I don't even blame the kids for feeling or acting that way- I would be angry if I were them too. Some of the staff bully the kids, and occasionally, other staff. There is no support for reporting incidents. There is virtually no therapeutic support for kids – the kids are in school until 1:00 and the therapist leaves at 2:00 – many of the kids reported not having therapy for over a month, even though it is a residential TREATMENT center. The staff are left completely on their own to structure the kids' days with no support from therapists. Staff egg on fights and threaten to restrain kids at every little sign of resistance. Kids have no choices, and there is no opportunity for them to engage in anything supportive of their growth and development. The job also pays little and uses that as leverage for people to work double shifts to gain overtime pay. Staff push themselves to exhaustion for the pay while working with kids who need A LOT of attention. Overall, extremely unsafe and unsupportive environment in so many ways.[99]

58.     Another employee who worked as a Case Manager reviewed Devereux on Glassdoor.com on April 23, 2019, giving it one out of five stars and complaining that, "Literally you get thrown into a job that you know nothing about and are expected to manage a huge caseload. Impossible to function and maintain sanity."[100]

59.     As reported by the *Philadelphia Inquirer*, "clinical staff raised warnings that the company wasn't attracting the right employees."[101] For example, the Devereux Deerhaven, New

---

[99] *See* Exhibit 4 hereto.
[100] *See* Exhibit 5 hereto.
[101] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

Jersey campus director told the *Daily Record* in 1985, "The problem is that the salaries that we are able to pay our staff are so inadequate."[102]

60.     A Direct Care Professional in Colorado complained on Glassdoor.com:

> Expected to work two to three hours after shift to do paperwork. Only pay 12.50 plus $1 shift [differential] if you work after 3pm and on weekends. Working 14 hour shifts with no 15 minute breaks, bathroom breaks when you can (rare), no meal breaks. Expect injuries from the kids. Management always telling you how to do better, not addressing moral[e] or high turnover. Lack of supervisors because of high turnover and low moral[e]. Benefits are expensive and you already at a very low (non-living wage.)[103]

61.     Another former Vocational Aide who worked at a Devereux facility in Woodbury, New Jersey gave Devereux one out of five stars, and reported in 2019 that, "[I]t is very hard surviving off of a paycheck coming from Devereux."[104]

62.     There is no excuse for Devereux to have allowed this systemic abuse in its facilities. Devereux had the funds to hire qualified employees, provide adequate staffing and training, and to supervise its staff. Devereux receives more than $497 million per year and 95% of its revenue is from government sources.[105] In the fiscal year 2020, Devereux received approximately $7.1 million from the Philadelphia DHS, about $1.1 million of which was supposed to be used for housing and treating children with psychiatric, intellectual, and behavioral disabilities.[106] CBH, with which the City of Philadelphia contracts to place Medicaid recipients in psychiatric residential

---

[102] *Id.*
[103] *See* Exhibit 6 hereto.
[104] *See* Exhibit 7 hereto.
[105] Barbara Laker & Wendy Ruderman, *Philly to remove 53 kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited December 27, 2023).
[106] *Id.*

treatment, paid Devereux $12.9 million in 2019—$7.7 million of which was for residential treatment facilities.[107]

63.    Despite the large amount of public funding that Devereux receives, Devereux has severely understaffed its facilities.[108] For example, as reported by the *Philadelphia Inquirer*, a staff member who was supposed to be responsible for only seven children in a shift would at times end up caring for twenty children.[109] The supervision issues were so severe that a police detective reportedly met with leaders at Devereux's Malvern campus to ask it to fix its staffing issues.[110]

64.    Other staff failed to do their jobs, which included ensuring children's safety. As reported by the *Philadelphia Inquirer,* Devereux staff seemed to disappear for hours and regularly slept through their shifts.[111] As further reported by the *Philadelphia Inquirer,* some of them played video games for hours without checking on the students in their care even though that was part of their job.[112] It was further reported that instead of checking on students every 15 minutes during the night as required, some Devereux staff even came to work with sleeping bags and pillows so that they could sleep through the night.[113] One reason for these failures is that Devereux's staff

---

[107] *Id.*

[108] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

[109] *Id.*

[110] *Id.*

[111] Barbara Laker & Wendy Ruderman, *Philly to remove 53 kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited December 27, 2023).

[112] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).

[113] *Id.*

was severely underpaid and had to work more than one job.[114] Meanwhile, at least one child was reportedly sexually abused in a closet.[115]

65.     As reported by the *Philadelphia Inquirer*, Devereux only paid its staff an average of $26,000 per year in 2017.[116] The low pay encouraged staff to work 16- hour shifts to earn overtime pay.[117] Because pay was so low, Devereux likely could not attract employees who were properly trained in caring for children with disabilities and mental health needs. The *Philadelphia Inquirer* reported that "former staffers pointed to low pay as a reason for the misconduct."[118] For example, according to the *Philadelphia Inquirer*, a former Devereux staff member who worked at a facility in Georgia between 2011 and 2013 said in a deposition recounted in the news report, "Because of the type of work that the staff does, they get burned out. And the pay isn't great, so you don't get people in there who are professional."[119]

66.     Devereux put vulnerable children in danger by underpaying and overworking staff, and inadequately supervising them, while receiving hundreds of millions in government funding.

67.     Despite this unacceptable failure to ensure children's safety from staff and other students, in 2018, Devereux campaigned to raise $1.25 million for a new facility, *Phoenix Business Journal* reported.[120]

---

[114] *Id.*
[115] *Id.*
[116] *Id.*
[117] *Id.*
[118] *Id.*
[119] *Id.*
[120] Angela Gonzales, *Nonprofit to break ground on $1.25M residential treatment center in Scottsdale*, PHOENIX BUSINESS JOURNAL, https://www.bizjournals.com/phoenix/news/2018/04/15/nonprofit-to-break-ground-on-1-25m-residential.html (last visited December 27, 2023).

68.     Devereux announced later in 2020 that it had "received funding from the Florida State Legislature to expand the organization's Commercial Sexual Exploitation of Children (CSEC) program, which provides comprehensive treatment for children and adolescents who have experienced emotional, physical or sexual trauma."[121]

69.     Devereux was aware of initiatives that it could adopt to protect its students from abuse. It identified solutions such as increased training and employment screenings but failed to implement these measures for years.[122] Devereux also allowed boys to stay in rooms with walk-in closets even after they had begun to remove such closets from other areas of the facilities due to pervasive abuse. As the *Philadelphia Inquirer* reported, a boy was assaulted in one of these walk-in closets that had not yet been removed.[123] Because Devereux failed to take even these basic measures to protect its students, many students will carry the emotional and physical scars of Devereux's inaction for the rest of their lives.

## IV.     Plaintiffs were abused in Devereux facilities.

70.     Plaintiffs Jane Doe 8, Jaime Torres, Jacob Wright, Molly Brandon, John Doe 5 and John Doe 6 were abused during their treatment at Devereux.

### A.     Plaintiff Jane Doe 8

71.     Plaintiff Jane Doe 8 was approximately 15 years old when she was given mood stabilizing medication without her mother's consent in a residential Devereux treatment center in

---

[121] *Devereux Florida Receives Funding to Support Sexually Exploited Youth*, DEVEREUX ADVANCED BEHAVIORAL HEALTH,
https://www.devereux.org/site/SPageServer/?pagename=csec_2020_funding (last visited December 27, 2023).
[122] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited December 27, 2023).
[123] *Id.*

Westminster, Colorado.[124] This medication made Jane Doe 8 extremely irritable, resulting in a serious physical altercation with another resident.

72.     After approximately nine months at Devereux's Westminster facility, Jane Doe 8 was placed in a residential Devereux treatment center in San Diego, California.

73.     Plaintiff Jane Doe 8 was approximately 16 or 17 years old when she was sexually abused by a female staff member at Devereux's San Diego facility ("Staff Abuser 1"). This staff member gave Plaintiff Jane Doe 8 preferential treatment in exchange for sexual acts, and would take Plaintiff Jane Doe 8 on outings alone even when Plaintiff Jane Doe 8 said she did not want to go. Staff Abuser 1 would retaliate if Plaintiff Jane Doe 8 refused to perform a sexual act or cooperate with the staff member's demands.

74.     On one occasion, Plaintiff Jane Doe 8 ran away from Devereux. She called another Devereux staff member ("Staff Abuser 2") from a pay phone for assistance. Staff Abuser 2 picked up Jane Doe 8 in her car, drove Jane Doe 8 to Staff Abuser 2's house, and initiated sex after providing Jane Doe 8 with alcohol.

75.     When Plaintiff Jane Doe 8 returned to Devereux approximately two days later, Plaintiff Jane Doe 8 told her mother about the sexual abuse and reported it to her Devereux counselor.

76.     After Plaintiff Jane Doe 8 reported the sexual abuse to her Devereux counselor, other Devereux staff members blamed Jane Doe 8 for the abuse.

---

[124] Antipsychotic medications are often used to make abused children more tractable, instead of properly and appropriately dealing with the underlying source of their behavioral issues. But "chemical restraint" via these medications has significant downsides: they interfere with motivation, the ability to learn, and the ability to attach and interact socially, which are key elements of healthy development. *See* BKTS at 37.

77.     A few months after Plaintiff Jane Doe 8 left Devereux, Staff Abuser 1 contacted Plaintiff Jane Doe 8 and urged her not to tell the police about the sexual abuse she experienced at Devereux.

78.     Since leaving Devereux, Plaintiff Jane Doe 8 has struggled with anxiety and nightmares and was diagnosed with PTSD.

79.     At no time could, nor did, Plaintiff Jane Doe 8 consent to any of the horrendous acts through which she was forced to suffer.

**B.     Plaintiff Jaime Torres**

80.     Plaintiff Jaime Torres was 11 years old when he was physically and sexually abused by staff members and peers in a residential Devereux treatment center in West Chester, Pennsylvania.

81.     On one occasion, a Devereux staff member forced Plaintiff Torres to stimulate the staff member's penis with Plaintiff Torres' hand. Plaintiff Torres reported the abuse to his stepfather and therapist. Plaintiff Torres was then moved to another building.

82.     On another occasion, Plaintiff Torres was using the bathroom on the school floor when a 16 or 17 year old resident came into the stall, pinned him to the wall, and forced Plaintiff Torres to perform oral sex on him. A Devereux staff member caught them and sent Plaintiff Torres to Devereux's on-site medical facility, but no other action was taken.

83.     While Plaintiff Torres was at Devereux, he was subjected to physical abuse by being repeatedly restrained in inappropriate ways that caused him physical harm. Devereux staff put him in holds and slammed on his chest, knocking the wind out of him. On one occasion, the assistant supervisor of the campus put Plaintiff Torres in a hold, dug his knee into Plaintiff Torres's back, and head-butted Plaintiff Torres from behind, making his nose bleed.

84.     Devereux staff would intimidate residents into not reporting physical and sexual abuse to their therapists. Plaintiff Torres remembers that staff would stand outside therapy sessions, withhold his food, and give it to other residents who did not report incidents of abuse.

85.     Plaintiff Torres suffers physical and emotional trauma due to the abuse he experienced at Devereux.

86.     At no time could, nor did, Plaintiff Torres consent to any of these horrendous acts through which he was forced to suffer.

**C.      Plaintiff Jacob Wright**

87.     Plaintiff Wright was 16 years old when he was physically and sexually abused by staff in a residential Devereux treatment center in Houston, Texas.

88.     Plaintiff Wright was repeatedly sexually abused by Devereux staff. On his first night at Devereux, Plaintiff Wright woke up to a male Devereux staff member standing over his bed. The staff member tried to rape him and punched Plaintiff Wright repeatedly in the face and abdomen when Plaintiff Wright tried to fight him off. Another male staff member came into the room and together, the two staff members held Plaintiff Wright down and tied his arms behind his back with a zip tie. The staffers left Plaintiff Wright tied up for the remainder of the night shift until another resident untied him.

89.     The same male Devereux staffer continued to rape Plaintiff Wright throughout his stay at Devereux. The staffer would taunt and irritate Plaintiff Wright at school to provoke an outburst so that Plaintiff Wright would be sent back to his room, where the staffer would sexually abuse him.

90.     Devereux staff placed Plaintiff Wright in locked, isolated spaces ("seclusion rooms") unnecessarily dozens of times during his stay, where he was often sexually abused by the same male staffer and, later, by his Devereux caseworker. On one occasion, Plaintiff Wright was

in a seclusion room and he woke up to the male staffer in the room with him. The staffer had turned off the cameras in the room and then raped Plaintiff Wright.

91.     Plaintiff Wright tried to escape Devereux and was put on house arrest in his room. During this time, he was not permitted to go to the cafeteria and had to ask permission to leave his room to go to the bathroom. Devereux staff withheld food from Plaintiff Wright during this period, resulting in a dangerously fast drop in his body weight.

92.     Plaintiff Wright reported the sexual abuse to maintenance technicians, a nurse, and another Devereux staff member, but his pleas for help fell on deaf ears. Plaintiff Wright also tried to report the abuse to his parents, but Devereux staff would monitor his phone calls or take away his phone privileges if they thought he was going to say something negative about his time at Devereux. Devereux staff also stopped Plaintiff Wright from calling the police to report the abuse.

93.     Plaintiff Wright was also physically abused repeatedly by Devereux staff and residents. Devereux staff burned Plaintiff Wright with cigarettes. On one occasion, Plaintiff Wright was waiting in line in the cafeteria when another resident punched him in the face. Devereux staff restrained Plaintiff Wright while other residents to beat him. One resident stabbed Plaintiff Wright in his jaw. Devereux staff told Plaintiff Wright that he was responsible for his own injury and denied him medical care.

94.     On another occasion, the male staffer who sexually abused Plaintiff Wright also broke his right hand while he was in school. Plaintiff Wright was given medical treatment first by the campus nurse and, after a week, by the doctor. Eventually, Devereux took Plaintiff Wright to an off-campus doctor for a cast. Due to a mistake in the paperwork, the off-campus doctor began to fracture and set Plaintiff Wright's *left* hand before realizing the mistake and then setting his *right* hand in a cast.

95.     Following the incident with his broken hand, Plaintiff Wright attempted to escape Devereux, and Devereux staff called the police. The police gave Plaintiff Wright the choice of going to jail or staying at Devereux; he chose jail. When Plaintiff Wright refused to leave jail to return to Devereux, his caseworker had him transferred from the private cell he was in into a shared cell with adult men. The police did not charge Plaintiff Wright and helped him return home to California.

96.     After leaving Devereux, Plaintiff Wright reported the abuse he suffered at Devereux to the Santa Cruz Sheriff and the Santa Cruz Public School District.

97.     Following the abuse he suffered at Devereux, Plaintiff Wright struggled to cope and became homeless for over a year. Plaintiff Wright continues to suffer serious consequences as a result of the abuse he sustained at Devereux, and has attempted suicide many times.

98.     At no time could, nor did, Plaintiff Wright consent to any of these horrendous acts through which he was forced to suffer.

**D.     Plaintiff Molly Brandon**

99.     Plaintiff Brandon was 14 years old when she was sexually, physically, and emotionally abused by Devereux staff in a residential Devereux treatment center in Westminster, CO.

100.    Plaintiff Brandon was sexually abused by Devereux staff on a number of occasions. On one occasion, a male Devereux staff member restrained Plaintiff Brandon because she was being "non-compliant." During the restraint, which lasted approximately thirty minutes, he wrapped his arms around Plaintiff Brandon's chest, pulled up her shirt, and groped her breasts. Devereux often used male staff to restrain female patients.

101.    On another occasion, Plaintiff Brandon was sleeping in her room when another male staff member snuck in, laid down next to her, rubbed her back, and kissed her neck until a female staff member walked in.

102.    Devereux staff repeatedly placed Plaintiff Brandon in seclusion rooms unnecessarily, even though the rooms were not cleaned regularly and were sometimes covered in the urine or feces of other Devereux patients. During her eight-month stay at Devereux, Plaintiff Brandon was placed in seclusion rooms dozens of times. Devereux staff repeatedly withheld food, water, and bathroom privileges from Plaintiff Brandon for extended periods while in seclusion and also subjected her to unwarranted strip searches.

103.    Devereux staff repeatedly restrained Plaintiff Brandon in ways that physically injured her. On one occasion, a Devereux staff member wrapped his arm around Plaintiff Brandon's neck and body slammed her to the floor. Staff routinely put residents in headlocks or choked them until they stopped resisting. Staff restrained residents for minor transgressions, such as being "too loud" or questioning staff's authority.

104.    Devereux staff member injured Plaintiff Brandon on another occasion by squeezing her hand while she held a lightbulb, causing it to shatter and cut her hand. Devereux placed Plaintiff Brandon in a seclusion room and did not provide her medical attention.

105.    Devereux residents would get into frequent physical fights, which Devereux staff would watch but never intervene. On one occasion, Plaintiff Brandon was hit on the head and sustained a concussion, but Devereux refused her medical treatment.

106.    Devereux staff also administered a cocktail of heavy medications to all residents, including Plaintiff Brandon, which, based on Plaintiff Brandon's understanding, was intended to

allow staff to abuse the patients and students in Devereux's care without resistance.[125] When she tried to refuse her medications, Devereux staff punished her by putting her in a seclusion room.

107.    Plaintiff Brandon continues to suffer from the sexual, physical, and emotional abuse she sustained at Devereux.

108.    At no time could, nor did, Plaintiff Brandon consent to any of the horrendous acts through which she was forced to suffer at Devereux.

### E.    **Plaintiff John Doe 5**

109.    On or around May or June 2021, Devereux placed Plaintiff John Doe 5, who was approximately 14 years old and residing in Devereux's Scottsdale facility, with a roommate who was 16 years old. On their first night in the room together, the roommate forced Plaintiff John Doe 5 to perform oral sex on him. The roommate continued to force Plaintiff John Doe 5 to perform oral sex on him every night for two weeks. In the third week of sharing a room, the roommate forced Plaintiff John Doe 5 to submit to anal sex three times before Devereux removed the roommate from Plaintiff John Doe 5's room.

110.    Plaintiff John Doe 5 did not report these instances of sexual assault to anyone because the roommate told him not to tell anyone, and Plaintiff John Doe 5 was scared of what would happen if he reported the sexual abuse.

111.    Devereux failed to prevent or detect such resident-on-resident sexual abuse—an especially high risk between roommates.

---

[125] Antipsychotic medications are often used to make abused children more tractable, instead of properly and appropriately dealing with the underlying source of their behavioral issues. But "chemical restraint" via these medications has significant downsides: they interfere with motivation, the ability to learn, and the ability to attach and interact socially, which are key elements of healthy development. *See* BKTS at 37.

112.    As a result of this sexual abuse, Plaintiff John Doe 5's mental wellbeing suffered. He was misdiagnosed with bipolar disorder and was not properly treated for his trauma for years because he was too scared to report his sexual abuse.

113.    At no time could, nor did, Plaintiff John Doe 5 consent to any of these horrendous acts through which he was forced to suffer.

F.    **Plaintiff John Doe 6**

114.    On August 28, 2022, Plaintiff John Doe 6 was stabbed in the cheek, two inches from his eye, by another resident recently admitted to Devereux with a pen. The resident should not have had access to the pen. Plaintiff John Doe 6 was taken to urgent care and received four stitches.

115.    A nurse at Devereux contacted Plaintiff John Doe 6's mother only to tell her that Plaintiff John Doe 6 was being taken to urgent care. Devereux did not provide Plaintiff John Doe 6's mother any details about the incident itself until two days later, when various staff gave conflicting accounts of the stabbing. Devereux insisted that Plaintiff John Doe 6 have his stitches removed by the campus doctor, rather than at urgent care, despite the fact that Plaintiff John Doe 6 experienced symptoms that required him to return to urgent care.

116.    This was not the only incident where Plaintiff John Doe 6 was attacked by a Devereux resident. A few weeks before the above incident, Plaintiff John Doe was attacked by his roommate. On another occasion, Plaintiff John Doe 6's roommate chased him down the hallway, causing him to trip and injure himself. When Plaintiff John Doe 6's mother learned of these incidents, she asked a counselor to assign (or have Devereux assign) a new roommate. The counselor refused her request, stating words to the effect of "We don't want [Plaintiff John Doe 6] to be comfortable."

117.    In 2022, a male Devereux staffer began cultivating a close relationship with Plaintiff John Doe 6. This staffer calls Plaintiff John Doe 6 "son" and gives him expensive clothes and shoes, and candy and ice cream cones (which are not part of Plaintiff John Doe 6's approved diet). Plaintiff John Doe 6's mother repeatedly raised concerns with John Doe's therapist that this staffer was grooming her son, and although the therapist admitted that such conduct was improper, Devereux took no action to investigate or stop the behavior.

118.    Devereux repeatedly treated Plaintiff John Doe 6 with medical care without first informing his mother or obtaining her consent. In or around April 2023, Devereux had Plaintiff John Doe's foot x-rayed and had two of Plaintiff John Doe 6's teeth repaired at the dentist. In both instances, Devereux did not inform his mother until after the medical treatment and did not give her information regarding why the treatment was necessary.

119.    At no time could, nor did, Plaintiff John Doe 6 consent to any of the abuse and inappropriate acts he experienced at Devereux.

## **VICARIOUS LIABILITY**

120.    Devereux is vicariously liable for the tortious misconduct described herein by employing staff who mistreated and abused Plaintiffs.

121.    When Plaintiffs were physically and emotionally mistreated by Devereux staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Devereux patients, such as by employing medically improper, harmful restraining and seclusion techniques against Plaintiffs.

122.    Devereux staff members used their positions as employees of Devereux to enable mistreatment, including abuse, of Plaintiffs such that Devereux is vicariously liable for their conduct.

123.     Staff members at Devereux are charged with the care of children with physical, emotional, and/or intellectual disabilities and entrusted to keep them safe. But for their employment at Devereux, staff members would not have been in unsupervised situations with these young and vulnerable victims. Additionally, the responsibilities associated with staff members' employment has enabled them to exert excessive and abusive authority over victims, including Plaintiffs.

124.     Staff members took advantage of the authority associated with their responsibilities at Devereux to Plaintiffs.

125.     Devereux staff members' abuse of Plaintiffs constitutes an assault or battery, as detailed further below.

126.     Devereux ratified its staff members' abusive conduct toward Plaintiffs by failing to discipline, take corrective action, and/or report child abuse. For decades, Devereux has sanctioned this culture of abusive behavior by its staff, as described above.

127.     These tortious acts were also foreseeable, as Devereux was aware of repeated incidents of sexual, physical, and emotional abuse of Devereux patients within its facilities. These repeated instances of abuse alerted or should have alerted Devereux that other staff members may be abusing students.

128.     In addition to the long, repeated history of abuse by staff members, Devereux knew that its patients, including Plaintiffs, were particularly susceptible to mistreatment as youth with disabilities and critical mental health needs. Devereux knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that its staff would continue to abuse vulnerable children in its treatment programs, including Plaintiffs.

129.    As a direct and proximate result of Devereux's employees' abuse towards Plaintiffs, Plaintiffs have suffered physical harms and have suffered and will continue to suffer physical and emotional pain and distress. Devereux is vicariously liable for the intentional harms described herein.[126]

## CAUSES OF ACTION[127]

### COUNT I
### Violation of Title IX (20 U.S.C. §§ 1681, *et seq.*)
### Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment

130.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

131.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

132.    Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment—including sexual assault—by school employees, students, and third parties.

133.    Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

134.    DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student

---

[126] Plaintiffs clarify which claims are brought vicariously in the Counts below but, to avoid any confusion, include this separate explanation of the theory of liability.
[127] All claims herein are brought on behalf of all Plaintiffs unless otherwise indicated.

and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

135.    Plaintiffs are "persons" under Title IX.

136.    Devereux's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Devereux provides to its patients and residents, placing Devereux squarely in the purview of Title IX.

137.    Defendant receives federal financial assistance for its education programs and therefore is subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

138.    Under Title IX, Devereux was required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

139.    Before Plaintiffs were abused while at Devereux, Devereux had actual knowledge of prior sexual abuse, harassment, and assault of youth in its facilities, dating back decades.

140.    Based on these prior repeated incidents of sexual abuse and assault, and Devereux's knowledge of its own failure to have, implement, and/or enforce proper policies to prevent and/or respond to incidents of sexual abuse and assault, Devereux had actual knowledge of the substantial, increased, above-societal baseline risk that Plaintiffs would be sexually harassed, abused, or assaulted at Devereux.

141.    With this knowledge, Devereux had the authority—and obligation—to address the heightened risk of sexual abuse in its programs, and had the authority to take corrective measures, including by:

a.   Implementing and enforcing best-practice policies and procedures for the prevention of, and proper response to, incidents of sexual abuse and harassment at its facilities;

b.   Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;

c.   Thoroughly investigating and terminating the employment of staff members with known complaints of prior sexual abuse and harassment of youth;

d.   Increasing the quality of staff supervision, particularly during vulnerable nighttime hours, and not allowing staff members to take youth on unsupervised outings where sexual abuse occurred;

e.   Maintaining appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected; and

f.   Improving Devereux's physical facilities to increase visibility such that no concealed areas remained where abuse could occur undetected.

142.   Devereux's failure to address the substantial risk of sexual abuse in its programs and facilities, given prior complaints and reports about past abuse, and its failure to set appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

143.   Plaintiffs were subject to sexual harassment, abuse, and assault by Devereux staff members and residents while patients and/or residents at Defendant's facilities and programs as described above, including rape of a minor and other unwelcome conduct of a sexual nature.

144.   The sexual harassment, abuse, and assault experienced by Plaintiffs at Devereux constitutes sex discrimination under Title IX. As explained in Title IX guidance issued by the U.S.

Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.[128]

145.    Devereux was on actual notice of the conduct as described above, but nonetheless failed to carry out its duties to investigate and take corrective action under Title IX. Among other things, Devereux staff directly witnessed, perpetrated, or were told about the abuse of Plaintiffs. Further, Plaintiffs Jane Doe 8, Wright, and Torres reported directly to Devereux staff that they were being abused and assaulted, but the abuse continued without corrective action by Devereux. The history of sexual abuse at Devereux facilities is well-documented. In fact, the CEO of Devereux was not surprised to hear of the repeated sexual and physical abuse revealed by the *Philadelphia Inquirer's* recent investigation. As stated in his response to the Report, the CEO suggested that Devereux was aware of *every* incident of abuse included in the Report.[129]

146.    Devereux is, and has been, deliberately indifferent to the substantial risk of sexual abuse, assault, and molestation posed to all youth who enter its programs and treatment centers. After receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Devereux youth, Defendant ignored the sexual abuse occurring under its watch and allowed it to continue.

147.    Devereux is responsible for setting and approving all national, organization-wide policies and protocols for Devereux programs and operations, including sex discrimination policies.

---

[128] https://www2.ed.gov/about/offices/list/ocr/docs/sexhar00.html (last visited December 27, 2023).

[129] https://web.archive.org/web/20210301153112/https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited December 27, 2023).

148.    Devereux failed to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs. As a result of this deliberate indifference, Plaintiffs were subjected to  sexual abuse and/or faced a heightened risk of sexual abuse as residents at Devereux facilities.

149.    The heightened risk of sexual harassment, abuse, and assault experienced by Plaintiffs at Devereux was so severe, pervasive and objectively offensive that it effectively barred their access to educational opportunities and benefits, including a safe educational environment, full access to treatment programs, and appropriate medical care while at Devereux.[130] This is because abuse—and the constant risk and fear of it—physiologically rewires the brain in a way that impairs learning, development, communication, and growth.[131]

150.    Plaintiffs, who were all school-aged at the time of their abuse, relied on Devereux to receive their education. Being subjected to pervasive, repeated abuse and a sustained threat of sexual assault denied Plaintiffs the ability to benefit from Devereux's educational opportunities. The severe anxiety, trauma, fear, and suffering inflicted by Devereux hindered Plaintiffs' ability to meaningfully participate in their classes and educational programming at Devereux.

---

[130] The effect of childhood trauma on learning is profound. More than half of those abused as children reported having learning or behavioral problems compared with just three percent of those who were not abused. *See* BKTS at 146.

[131] *See, e.g.,* BKTS at 21 ("Trauma results in a fundamental reorganization of the way mind and brain manage perceptions. It changes not only how we think and what we think about, but also our very capacity to think."); *id.* 44-45 (trauma deactivates the left hemisphere of the brain, which "has a direct impact on the capacity to organize experience into logical sequences… In technical terms they are experiencing the loss of executive function."); *id.* 46 ("The insidious effects of constantly elevated stress hormones include memory and attention problems…"); *id.* 70 ("attention, concentration, and new learning … are compromised by trauma"); *id.* 325 ("Chronic abuse and neglect in childhood interfere with the proper wiring of sensory-integration systems. In some cases this results in learning disabilities…").

151.    As a direct and proximate result of Devereux's actions and/or inactions, Plaintiffs were damaged.

152.    Devereux was deliberately indifferent to a sexually hostile culture with a heightened risk of sexual harassment within its programs and facilities by, among other things:

    a.    Failing to address children and families' reports of sexual abuse and/or discouraging youth from reporting such abuse;

    b.    Failing to promptly and adequately investigate, remedy, and respond to complaints about sexual abuse at Devereux;

    c.    Allowing staff members with known complaints of prior sexual harassment of youth to have further access to Devereux residents and patients;

    d.    Failing to adequately supervise staff members, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred; and

    e.    Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected.

153.    Devereux's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiffs would be sexually harassed. By failing to set appropriate sex discrimination policies, this risk of sexual harassment was increased even further. Because Devereux failed to take corrective measures to curb the pattern and practice of sexual abuse towards its patients at Devereux, instead allowing this conduct to thrive, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress.

154.    In addition to compensatory damages, which are the direct and proximate result of Devereux's actions and/or inactions, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

### COUNT II
#### Violation of Title IX (20 U.S.C. §§ 1681, *et seq.*)
#### Deliberate Indifference to Prior Sexual Harassment
#### (Plaintiffs Jane Doe 8, Wright, and Torres Against Devereux)

155.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

156.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

157.    Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment—including sexual assault—by school employees, students, and third parties.

158.    Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

159.    DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

160.    Plaintiffs are "persons" under Title IX.

161.    Devereux's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Devereux provides to its patients and residents, placing Devereux squarely in the purview of Title IX.

162.    Defendant receives federal financial assistance for its education programs and therefore is subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

163.    Plaintiffs Jane Doe 8, Wright, and Torres ("Plaintiffs" for purposes of this section) suffered sexual abuse that was so severe, pervasive, and objectively offensive that it deprived Plaintiffs access to educational opportunities.

164.    Plaintiffs each reported their abuse to authority figures at Devereux—therapist, staff member, nurse, and counselor—such that Devereux was on actual notice of their abuse.

165.    Despite having notice of this abuse and the ensuing harm, Devereux failed to appropriately respond and remedy the situations. Instead of helping Jane Doe 8 and removing her assailants as staff members, Devereux staff made Jane Doe 8 feel as if she was to blame for the abuse she suffered while the abuse continued. After Plaintiff Wright reported his abuse to maintenance technicians, a nurse, and a Devereux staff member, they did nothing to prevent further abuse from occurring. Instead, they stopped Plaintiff Wright from reporting the abuse to his parents and the police. When staff discovered another resident forcing Plaintiff Torres to perform oral sex on him, the staff member sent Plaintiff Torres to Devereux's medical facility but took no other action, such as ensuring that Plaintiff Torres would not come into further contact with the offending resident.

166.    These actions—and inaction—were clearly unreasonable in light of the known circumstances. By failing to remedy each situation, Devereux acted with extreme deliberate indifference in violation of Title IX.

167.    As a result of Devereux's actions and inaction, Plaintiffs were grievously harmed.

168.    In addition to compensatory damages, which are the direct and proximate result of Devereux's actions and/or inactions, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

## COUNT III
### NEGLIGENCE

169.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

170.    Devereux owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in its custody.

171.    Devereux acted with a lack of care towards Plaintiffs through its acts and omissions, including: allowing and authorizing a culture of abuse at Devereux facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Devereux programs; failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Devereux facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiffs' wellbeing while in Devereux programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within

Devereux programs; and failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Devereux programs.

172.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

173.    By failing to exercise ordinary care through its acts and omissions, Devereux foreseeably caused physical and emotional harm to Plaintiffs.

**<u>COUNT IV</u>**
**NEGLIGENT HIRING**

174.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

175.    Devereux is required to make an appropriate investigation of all employees staffed at its facilities. This duty requires that potential applicants are thoroughly and appropriately screened to ensure that they will provide safe care for the vulnerable children in Devereux's programs.

176.    Devereux knew or should have known that the employment of the staff members who abused Plaintiffs posed a risk or hazard to the youth in its treatment programs. With a thorough background check and investigation of applicants' prior work history, personal and professional references, and potential "red flags," Devereux would have known that these employees were not suitable for the particular duty of caring for children.

177.    It was unreasonable for Devereux to hire employees whom Devereux should have known, based on reasonable pre-hiring screening, were unsuitable to work in a behavioral health center for children and adolescents with cognitive differences and advanced mental health needs.

178.     As detailed above, Plaintiffs were harmed by various Devereux staff members. These harms include: rape, sexual assault, sexual grooming behaviors, physical assault, and withholding basic necessities.

179.     Because of Devereux's negligent hiring practices, Plaintiffs were foreseeably harmed by these employees. Had Devereux shown due care in the screening of its employees, Devereux staff members would not have been given the access and opportunity to physically, sexually, and/or emotionally abuse Plaintiffs.

**COUNT V**
**NEGLIGENT RETENTION**

180.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

181.     Devereux became aware or reasonably should have become aware that its employees were engaged in acts of physical, sexual, and/or emotional abuse of Devereux patients and residents, and yet failed to investigate, discharge, or reassign these employees.

182.     Devereux knew or should have known that the retention of staff members who abused Plaintiffs posed a risk or hazard to the youth in its treatment programs.

183.     Devereux reasonably should have known that, among other things, its staff: inappropriately restrained residents; inappropriately strip-searched residents; inappropriately placed residents in seclusion rooms; inappropriately and excessively medicated residents; withheld basic necessities from residents as punishment; groomed residents for sexual abuse; sexually assaulted residents; physically assaulted residents; enabled assaults between residents; ignored residents' pleas for help; and retaliated against residents for reporting abuse.

184.     With reasonable supervision and protocols in place, Devereux would have known about each of these incidents. Despite the fact that Devereux reasonably should have known about

this abuse, Devereux allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

185.   Devereux reasonably should have known of the abuse of each Plaintiff, yet negligently retained the employees responsible for the abuse. Because of Devereux's breach of its duty to take action to prevent reasonably foreseeable harm by its employees, Plaintiffs were grievously harmed.

## COUNT VI
## NEGLIGENT SUPERVISION

186.   Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

187.   Devereux owed a duty to exercise reasonable care in its operation of programs for youth with developmental and/or intellectual disabilities, behavioral needs, and mental health concerns such as to avoid harm to the vulnerable youth in its custody. Devereux possessed a special relationship with Plaintiffs, as Devereux was entrusted with the duty of care and custody over Plaintiffs, who were minors at the time.

188.   Devereux knew or should have known that the lack of supervision of staff members who abused Plaintiffs posed a risk or hazard to the youth in its treatment programs.

189.   Youth in Devereux programs cannot reasonably be expected to protect themselves. No child is reasonably able to protect himself or herself from sexual, physical, and emotional assaults and abuses by staff who are tasked with their care. This is even more true for youth in Devereux's programs, who come to Devereux because of their need for advanced behavioral health support. In many instances, advanced intellectual and/or developmental disabilities and behavioral health needs inhibit a child's ability to know or appreciate the nature of their relationships with

others and understand an appropriate versus an inappropriate interaction with a teacher or staff member.[132]

190.    Devereux reasonably should have known that Devereux staff were coercing residents into performing sexual acts, sexually abusing residents, and allowing resident-on-resident sexual abuse.

191.    Devereux failed to exercise ordinary care to prevent intentional harms by its employees acting outside the scope of their employment. Devereux was aware that its employees had for decades committed acts of sexual, physical, and emotional abuse towards Devereux patients, students, and residents. This gave Devereux reason to know that abuse of its residents and patients was commonplace and that Devereux needed to implement procedures and practices to prevent intentional harms by Devereux staff.

192.    Devereux knew that it had the ability to control the conduct of its staff, as Devereux is in an employer-employee relationship in which Devereux sets standards, protocols, and policies for its staff, exercises a supervisory role over staff, and has the capacity to fire and reassign its employees.

193.    Despite knowing of a pattern and practice of abuse in Devereux programs, Devereux failed to enact and implement appropriate policies and protocols including, for example: staffing sufficient numbers of Direct Support Professionals such that staff members were not alone with children, enacting supervision protocols to ensure that staff were following proper procedures, eliminating blind spots in Devereux facilities where abuse occurred undetected, and

---

[132] In addition, people who have experienced trauma are "stuck"—every new encounter is contaminated by past trauma. BKTS at 76. "[A]s long as the mind is defending itself against [past and future] assaults, our closest bonds are threatened, along with our ability to imagine, plan, play, learn, and pay attention to other people's needs." *Id.*

taking immediate action to investigate, reassign, and/or terminate employment for staff who engaged in abusive behavior towards patients and residents.

194.    Because of Devereux's negligent supervision in which Devereux breached its duty to exercise reasonable care to prevent outrageous and tragic harms to youth in its care, Plaintiffs were gravely harmed.

<u>**COUNT VII**</u>
**GROSS NEGLIGENCE**

195.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

196.    Devereux owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in its custody.

197.    Devereux acted with a lack of care towards Plaintiffs by demonstrating a conscious disregard or indifference towards their safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

198.    At all relevant times, Devereux owed a duty to Plaintiffs to implement practices and policies to, among other things:

      a.      Prevent sexual, emotional, and physical abuse of youth by Devereux staff;

      b.      Prohibit and prevent romantic or sexual relationships between youth and Devereux staff;

      c.      Prohibit grooming and other sexually exploitative behavior by Devereux staff;

      d.      Require the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Devereux programs by staff or by peers;

    e.      Require the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Devereux programs;

    f.       Mandate the training of all staff who work directly with youth in Devereux programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

    g.     Protect Plaintiffs from such abuse and foreseeable risks; and

    h.     Provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

199.    Devereux's duty arose from taking responsibility for the care and custody of youth attending its programs.

200.    Devereux acted recklessly and indifferently as the entity responsible for the care and custody of children with disabilities and advanced mental health needs who sought out Devereux for treatment, growth, and education, including Plaintiffs.

201.    Devereux knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who work closely with children and young adults suffering with advanced mental health needs, intellectual and developmental disabilities, and low IQs, Devereux created an unreasonable risk of harm to Plaintiffs so great that it was highly probable that the harm would result.

202.    As one of the nation's largest behavioral healthcare organizations, Devereux is or should be acutely aware of the delicate nature of working with these youth and the likelihood of abuse and harm resulting from the failure to closely monitor, train, and supervise its staff.

Devereux thus owed its resident youth a duty to protect them from the foreseeable risk of staff who take advantage of this power differential for improper purposes.

203.    The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments.[133] Especially in a group home or residential treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene.[134]

204.    By recklessly failing to keep these children safe while in its care and custody, Devereux exhibited a willful disregard for necessary precautions to reasonably protect Plaintiffs.

205.    As a direct and proximate result of Devereux's reckless indifference to Plaintiffs, Plaintiffs have suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation and loss of enjoyment of life. Plaintiffs were prevented and will continue to be prevented from performing their activities of daily living due to the gross negligence of Devereux.

## COUNT VIII
## NEGLIGENT MISREPRESENTATIONS

---

[133] In addition, it is well established that traumatized people—even adults—have enormous difficulty telling other people what has happened to them. *See* BKTS at 43. "Their bodies re-experience terror, rage, and helplessness, as well as the impulse to fight or flee, but these feelings are almost impossible to articulate." *Id.* This is because "all trauma is preverbal." *Id.* Indeed, studies using brain scans show that the area of the brain responsible for putting thoughts and feelings into words, Broca's area, shuts down when trauma is experienced, or re-experienced (such as via a flashback or an attempted description). *Id.* at 44, 60, 70.
[134] https://disabilityjustice.org/justice-denied/abuse-and-exploitation/  (last visited December 27, 2023).

206.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

207.     In the course of its business, Devereux presents itself as maintaining a gold standard in the field of behavioral health treatment for youth with disabilities. Devereux's website describes its "core values" of compassion, knowledge, collaboration, dedication, learning and progress.[135] Devereux details its commitment to serving the community, and its use of a philosophy of care which "integrates the latest scientific and medical advancements with time-tested philosophies and compassionate family engagement to provide practical, effective and efficient care, making a meaningful difference in the lives of those we serve, and the world around them."[136]

208.     Devereux's website also describes its "commitment to safety and security," detailing the organization's recent formalization of its safety and security protocols "through an evolved culture of Servant Leadership and a dedicated commitment to operational, clinical and risk management best practices."[137] Through its advertising, Devereux represented to Plaintiffs and their families that adequate practices and protocols were in place at its facilities to ensure the safety of children placed in its care to receive treatment. What Devereux failed to mention in its advertising, however, is the repeated pattern of sexual abuse and exploitation of young people who enter its programs.

209.     Devereux's website and advertising misrepresents material facts regarding the quality of its programs, as Devereux fails to demonstrate an actual commitment to safety or security for its patients, students and residents. Thus, Devereux's representations were not true, as

---

[135]https://www.devereux.org/site/SPageServer/?NONCE_TOKEN=DD6B52FFC9FF6889D9FC1A342C5CF38E&pagename=Mission (last visited December 27, 2023).
[136] https://www.devereux.org/site/SPageServer/?pagename=philosophy_of_care (last visited December 27, 2023).
[137] https://www.devereux.org/site/SPageServer/?pagename=safety_and_security (last visited December 27, 2023).

Devereux negligently supervised and managed its facilities in such a way that children routinely suffered sexual, physical, and emotional abuse while under its watch.

210.    Plaintiffs and their family members relied on Devereux's representations about the quality of its programs in choosing to enroll in treatment at Devereux.

211.    Devereux knew or should have known that the representations about the quality of its programs—especially regarding the safety and security of its patients, students and residents—would be relied upon by those individuals and their families.

212.    Plaintiffs were harmed because of Devereux's negligent misrepresentations about the safety and security of its programs. Plaintiffs' parents and guardians reasonably relied on Devereux's representations of safety and security and were thereby harmed when they unknowingly placed their children in Devereux's custody.

**COUNT IX**
**Violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code**
**§§ 17200 *et seq.***
**(Plaintiff Jane Doe 8 Against Devereux)**

213.    Plaintiff Jane Doe 8 incorporates by reference all prior paragraphs as if set forth in full herein.

214.    The UCL prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice."

Unlawful

215.    Devereux's conduct is unlawful in violation of the UCL because, as described below, it violates the California Consumers Legal Remedies Act.

216.    Devereux's conduct is unfair because it is immoral, unethical, unscrupulous, oppressive, and substantially injurious. Devereux took responsibility for the care, custody and wellbeing of Plaintiff Jane Doe 8 as a teenager with advanced and delicate behavioral health needs.

Devereux was entrusted with the treatment of Plaintiff Jane Doe 8 by her family, who sought Devereux's services to provide needed behavioral health interventions for their child.

217.    Devereux breached that trust and acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner by, among other things:

      a.    Continuing to hold itself out to the public as a safe, therapeutic environment for children with behavioral health needs while knowing of systemic, continued abuse of youth by Devereux staff;

      b.    Intentionally concealing from the public incidents and reports of child abuse in Devereux facilities;

      c.    Failing to prevent sexual, emotional, and physical abuse of youth by Devereux staff;

      d.    Inadequately screening new Direct Support Professionals responsible for frequent interaction and oversight of youth;

      e.    Maintaining inadequate numbers of Direct Support Professionals such that youth were left unattended, unsupervised, and/or vulnerable to abuse occurring undetected by Devereux;

      f.    Failing to prohibit and prevent romantic or sexual relationships between youth and Devereux staff;

      g.    Failing to prohibit grooming and other sexually exploitative behavior by Devereux staff;

      h.    Failing to require and ensure the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Devereux programs by staff or by peers;

i.      Failing to implement the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Devereux programs;

j.      Failing to mandate and implement adequate training of all staff who work directly with youth in Devereux programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

k.      Failing to protect Plaintiff Jane Doe 8 from abuse and its foreseeable risks; and

l.      Failing to provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

218.    The gravity of the harm resulting from Devereux's conduct far outweighs any conceivable utility of this conduct. There are reasonably available alternatives that would further Defendant's stated purpose as a behavioral health care provider for children, such as enhanced screening measures, more reasonable and rigorous training of Direct Support Professionals, increased staffing during vulnerable nighttime hours, enhanced supervision of Direct Support Professionals, and implementing safer surveillance and/or building designs so as to avoid blind spots.

219.    Plaintiff Jane Doe 8, who was then 16 or 17 years old, could not have reasonably avoided injury from Devereux, as she was groomed and sexually abused two adult Devereux staff members who were responsible for her care and supervision.

Fraudulent

220.    Devereux's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer:

a.     When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiff Jane Doe 8.

b.     Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

221.    Devereux had the opportunity to tell Plaintiff Jane Doe 8 and her family the truth about its behavioral health centers and services when Plaintiff Jane Doe 8's family enrolled her in this treatment program. Despite this opportunity, Devereux failed to disclose the above information to Plaintiff Jane Doe 8 or her family. Had Devereux made those disclosures, Plaintiff Jane Doe 8 would not have been sent to Devereux for her treatment.

222.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health center because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiff through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux placed a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiff, yet actively concealed this information from Plaintiff Jane Doe 8 and her family.

223. As a direct and proximate result of Defendant's UCL violations, Plaintiff Jane Doe 8 has suffered injuries in fact, including physical harms, and seeks appropriate relief under the UCL, including injunctive relief and restitution. Had Devereux not made misleading statements and omissions regarding the safety and security of its treatment program for youth, Plaintiff would not have enrolled in the program and paid the requisite fees. In the meantime, Devereux generated more revenue than they otherwise would have through Plaintiff Jane Doe 8's treatment program fees, unjustly enriching itself. Plaintiff Jane Doe 8 thereby suffered economic losses in addition to her physical and emotional injuries.

224. Plaintiff Jane Doe 8 was harmed, and Devereux's misleading statements and omissions were a substantial factor in causing Plaintiff's harm.

225. The requested injunction under the UCL will primarily benefit the interests of the general public. It will have the primary purpose and effect of prohibiting unlawful acts that threaten injury to members of the public, most notably vulnerable children, who have been placed or who will be placed under the care and custody of Devereux.

### COUNT X
**Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*
(Plaintiff Jane Doe 8 Against Devereux)**

226. Plaintiff Jane Doe 8 incorporates by reference all prior paragraphs as if set forth in full herein.

227. Devereux is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

228. Plaintiff Jane Doe 8 is a "consumer" as defined by Civil Code §§ 1761(d) and 1770 and has engaged in "transaction[s]" as defined by Civil Code §§ 1761(e) and 1770.

229.     Devereux's acts and practices were intended to and did result in the continued sale of services to Plaintiff Jane Doe 8, and those acts and practices violated Civil Code § 1770, including by:

      a.     representing that its services had characteristics, uses, and benefits that they did not have;

      b.     representing that its services were of a particular standard, quality, or grade, when they were not;

      c.     advertising services with intent not to sell them as advertised; and

      d.     representing that the subject of a transaction had been supplied in accordance with a previous representation when it had not.

230.     Devereux's acts and practices violated the Consumers Legal Remedies Act because Devereux failed to disclose information that was material to Plaintiff Jane Doe 8's transactions with them:

      a.     When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiff Jane Doe 8.

      b.     Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

231.    Devereux had ample means and opportunities to alert Plaintiff at the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities. Devereux later had means and opportunities to alert Plaintiff and her family that Plaintiff Jane Doe 8 had suffered abuse while being treated in Defendant's behavioral health center.

232.    Despite this opportunity, Devereux failed to disclose the above information to Plaintiff Jane Doe 8 or her family. Had Devereux made those disclosures, Plaintiff Jane Doe 8 would not have been sent to Devereux for her treatment.

233.    Devereux had a duty to accurately disclose the nature, safety, and quality of its behavioral health center because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiff Jane Doe 8 through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiff, yet actively concealed this information from Plaintiff Jane Doe 8 and her family.

234.    As a direct and proximate result of Defendant's deceptive acts and practices in violation of the Consumer Legal Remedies Act, Plaintiff Jane Doe 8 has suffered actual damages. Had Devereux not made misleading statements and omissions regarding the safety and security of its treatment program for youth, Plaintiff Jane Doe 8 would not have enrolled in the program and paid the requisite fees. In the meantime, Devereux generated more revenue than they otherwise would have through Plaintiff Jane Doe 8's treatment program fees, unjustly enriching itself.

Plaintiff Jane Doe 8 thereby suffered economic harm in addition to suffering physical and emotional harm as a result of Devereux's deceptive practices.

235.    Devereux's misleading statements and omissions were a substantial factor in causing Plaintiff's harm.

236.    Plaintiff Jane Doe 8 accordingly is entitled to equitable relief, reasonable attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful, fraudulent and deceitful activity.

237.    Pursuant to Cal. Civ. Code § 1782(a), on October 4, 2023, Plaintiff Jane Doe 8 sent a letter to Devereux notifying them of these CLRA violations and affording Devereux the opportunity to correct its business practices and rectify the harm caused. Plaintiff sent the CLRA notice via certified mail, return receipt requested, to Devereux at Devereux's principal place of business. Plaintiff seeks money damages under the CLRA.

238.    Plaintiff Jane Doe 8's CLRA venue declaration is attached as Exhibit 8 to this complaint in accordance with Cal. Civ. Code § 1780(d).

239.    The conduct of Devereux set forth herein was reprehensible and subjected Plaintiff Jane Doe 8 to cruel and unjust hardship in conscious disregard of her rights, constituting oppression, for which Devereux should be punished by punitive and exemplary damages in an amount according to proof. Devereux's behavior evidences a conscious disregard for the safety of the children entrusted to them. Devereux's conduct was and is despicable and constitutes malice under Section 3294 of the California Civil Code. An officer, director, or managing agent of Devereux personally committed, authorized, and/or ratified the reprehensible conduct set forth herein. Plaintiff Jane Doe 8 thus seeks an award of punitive damages sufficient to penalize Devereux.

<u>COUNT XI</u>
**FAILURE TO REPORT CHILD ABUSE**
**(California Child Abuse and Neglect Reporting Act,**
**Cal. Penal Code §§ 11164-11174.4)**
**(Plaintiff Jane Doe 8 Against Devereux)**

240.    Plaintiff Jane Doe 8 incorporates by reference all prior paragraphs as if set forth in full herein.

241.    The Child Abuse and Neglect Reporting Act (Sections 11164-11174.4 of the California Penal Code), imposes reporting requirements for certain professionals to report known or suspected instances of child abuse or neglect.

242.    Included in the list of "mandated reporters" are "an administrator or employee of a public or private organization whose duties require direct contact and supervision of children," and "an employee of a child care institution, including, but not limited to, foster parents, group home personnel, and personnel of residential care facilities." Devereux and its staff fall within this list of mandated reporters, as Devereux is a behavioral health facility for youth through which its staff and employees routinely come into contact with children.

243.    In nearly every incident of abuse reported by the *Philadelphia Inquirer* in August 2020, Devereux failed to identify and report that children on its campus were being sexually abused or subject to grooming behaviors. Instead, these children with disabilities and mental health needs were left to report their own abuse or the abuse of their peers.

244.    Defendant had reason to know or suspect that Plaintiff Jane Doe 8 was being abused by Devereux staff. Plaintiff Jane Doe 8 was emotionally and sexually abused by a Devereux staffer who groomed Plaintiff Jane Doe 8 for a sexual relationship and forced Plaintiff Jane Doe 8 to perform sexual acts. The staffer retaliated against Plaintiff Jane Doe 8 when she refused to comply. Devereux staff knew about this abuse and did nothing. Devereux was thus aware of these acts of sexual abuse, which all occurred within Devereux's facility in San Diego, California.

245.     Devereux staff and officials need only "reasonable suspicion" that a child is being abused in order to trigger their duty to report. Even when clear, apparent, and repeated indicators of abuse and grooming were present, Devereux intentionally failed to take action to report this grievous abuse.

<u>**COUNT XII**</u>
**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
("UTPCPL"), 73 P.S. § 201-1, *et seq.*
(Plaintiff Torres Against Devereux)**

246.     Plaintiff Torres incorporates by reference all prior paragraphs as if set forth in full herein.

247.     The UTPCPL prohibits acts of unfair competition and "unfair or deceptive acts or practices."

248.     Devereux is a "person" as defined by 73 P.S. § 201-2 and has engaged in "trade" or "commerce" as defined by 73 P.S. § 201-2.

249.     Plaintiff Torres is a "person" as defined by 73 P.S. § 201-2 who, through his parents and/or guardians, purchased behavioral health treatment services from Devereux.

250.     Devereux's acts and practices were intended to and did result in the continued sale of services to Plaintiff, and those acts and practices violated the UTPCPL, 73 P.S. § 201-2, including by:

       a.     Representing that its services had characteristics or benefits that they did not have;

       b.     Representing that its services were of a particular standard, quality or grade, when they were not;

       c.     Advertising services with intent not to sell them as advertised; and

     d.      Engaging in any other fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding.

251.    Devereux's acts and practices violated the UTPCPL because Devereux failed to disclose information that was material to Plaintiff's transactions with them:

     a.      When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiff Torres.

     b.      Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

252.    Devereux had ample means and opportunities to alert Plaintiff at the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities. Devereux later had means and opportunities to alert Plaintiff Torres and his family that Plaintiff Torres had suffered abuse while being treated in one of Defendant's behavioral health centers, yet failed to do so.

253.    Plaintiff Torres and his family justifiably and reasonably relied on the assurances, promises, and representations Devereux made regarding the safety, security of its treatment centers. Had Devereux made the above disclosures, revealing to Plaintiff Torres and his family that in reality, Devereux's patients were subjected to frequent sexual, physical, and emotional abuse by staff, and that Devereux did not have adequate procedures and policies in place to

adequately protect and care for vulnerable children, Plaintiff Torres would not have been sent to Devereux for treatment.

254.     Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health centers because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiff through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux placed a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiff, yet actively concealed this information from Plaintiff Torres and his family.

255.     As a direct and proximate result of Defendant's deceptive acts and practices in violation of the UTPCPL, Plaintiff has suffered actual damages caused by the sexual and/or physical abuse he endured while at Devereux. Had it not been for Devereux's deception, Plaintiff would not have enrolled in Devereux's treatment program and paid the requisite fees.

256.     Plaintiff Torres is accordingly entitled to actual damages, equitable relief, reasonable attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful, fraudulent and deceitful activities.

## COUNT XIII
## ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF JANE DOE 8
### (Plaintiff Jane Doe 8 Against Devereux)

257.     Plaintiff Jane Doe 8 incorporates by reference all prior paragraphs as if set forth in full herein.

258.     Devereux staff members, who are put in charge of Devereux patients and trusted to keep them safe, used the authority and power associated with their roles to abuse Plaintiff Jane Doe 8.

259.     While Plaintiff Jane Doe 8 resided at Devereux in San Diego, California between the ages of 16 and 17, two Devereux staff members sexually abused her. One groomed Plaintiff Jane Doe 8 over a long period of time, forcing Jane Doe 8 to perform sexual acts on her and taking away privileges if she refused. A second staffer gave Plaintiff Jane Doe 8 alcohol and initiated a sexual relationship with Plaintiff Jane Doe 8 at the staffer's home.

260.     Plaintiff Jane Doe 8 did not and could not consent to these grievous harms and abuses.

261.     These acts are intentional, unwanted, and offensive physical contacts and/or non-consensual sexual acts towards a minor which constitute assault and battery for which Devereux is vicariously liable.

262.     Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 8 by its staff because ensuring Plaintiff Jane Doe 8 is not groomed and sexually abused falls within the scope of the staff members' employment.

263.     Further, Devereux is vicariously liable for assault and battery perpetrated on Plaintiff by its staff because Devereux employed its staff and staff were acting within the scope of employment.

264.     As a result of the assault and battery against Plaintiff Jane Doe 8 for which Devereux is vicariously liable, Plaintiff Jane Doe 8 has suffered severe emotional and physical harms that continue to affect her today and will continue to cause Plaintiff pain and suffering for the rest of her life.

## COUNT XIV
## ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF TORRES
### (Plaintiff Torres Against Devereux)

265.    Plaintiff Torres incorporates by reference all prior paragraphs as if set forth in full herein.

266.    Devereux staff members, who are put in charge of Devereux patients and trusted to keep them safe, used the authority and power associated with their roles to abuse Plaintiff Torres.

267.    While a patient at Devereux in West Chester, Pennsylvania, Devereux between the ages of 11 and 13, staff physically abused Plaintiff Torres, including by repeatedly restraining him in inappropriate ways that caused him physical harm. Devereux staffers put Plaintiff Torres in holds and slammed on his chest, knocking the wind out of him. On one occasion, the assistant supervisor of the campus put Plaintiff Torres in a hold, dug his knee into Plaintiff Torres's back, and head-butted Plaintiff Torres from behind, making his nose bleed. Devereux staff also forced Plaintiff Torres to fight other residents.

268.    A Devereux staff member sexually abused Plaintiff Torres by forcing him to stimulate his penis with Plaintiff Torres' hand.

269.    Plaintiff Torres did not and could not consent to these grievous harms and abuses.

270.    These acts are intentional, unwanted, and offensive physical contacts and/or non-consensual sexual acts towards a minor which constitute assault and battery for which Devereux is vicariously liable.

271.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Torres by its staff because appropriately restraining Plaintiff Torres falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and

other mental disorders which may necessitate *appropriate* restraint to protect the student, their peers and/or staff from harm.

272.    Further, Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Torres by its staff because Devereux employed its staff and staff were acting within the scope of employment.

273.    As a result of the assault and battery against Plaintiff Torres for which Devereux is vicariously liable, Plaintiff Torres has suffered severe emotional and physical harms that continue to affect him today and will continue to cause Plaintiff Torres pain and suffering for the rest of his life.

## COUNT XV
## ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF WRIGHT
### (Plaintiff Wright Against Devereux)

274.    Plaintiff Wright incorporates by reference all prior paragraphs as if set forth in full herein.

275.    While Plaintiff Wright was a patient at Devereux in Houston, Texas between the ages of 17 and 20, Devereux staff sexually and physically assaulted him, including by repeatedly restraining him in inappropriate ways that caused him physical harm.

276.    Devereux staff sexually abused Plaintiff Wright. Two Devereux staff members, including Plaintiff Wright's case worker, raped him on multiple occasions, sometimes working together to restrain and assault Plaintiff Wright.

277.    Devereux staff physically abused Plaintiff Wright. Devereux stomped on his hand and broke it; burned Plaintiff Wright with cigarettes; restrained Plaintiff Wright with excessive force that caused injuries; and beat Plaintiff Wright when he fought back against sexual abuse.

278.    Plaintiff Wright did not and could not consent to these grievous harms and abuses.

279.    These acts are intentional, unwanted, and offensive physical contacts and/or non-consensual sexual acts towards a minor which constitute assault and battery for which Devereux is vicariously liable.

280.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Wright by its staff because appropriately restraining and supervising Plaintiff Wright falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate *appropriate* restraint and supervision to protect the student, their peers and/or staff from harm.

281.    Further, Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Wright by its staff because staff acted within the scope of their employment.

282.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Wright by its residents who abused him because appropriately supervising residents falls within the scope of Devereux staff members' employment.

283.    As a result of the assault and battery against Plaintiff Wright for which Devereux is vicariously liable, Plaintiff Wright has suffered severe emotional and physical harms that continue to affect him today and will continue to cause Plaintiff Wright pain and suffering for the rest of his life.

## COUNT XVI
## ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF BRANDON
### (Plaintiff Brandon Against Devereux)

284.    Plaintiff Brandon incorporates by reference all prior paragraphs as if set forth in full herein.

285.    While Plaintiff Brandon was a patient at Devereux in Westminster, Colorado at the age of 14, Devereux staff sexually and physically assaulted her, including by repeatedly restraining her in inappropriate ways that caused her physical harm.

286.    A Devereux staffer inappropriately touched Plaintiff Brandon and kissed her neck while she was asleep in her room until a female staffer came in. Another Devereux staffer groped Plaintiff Brandon during a restraint by pinning her down by her breasts.

287.    These acts are intentional, unwanted, and offensive physical contacts and/or non-consensual sexual acts towards a minor which constitute assault and battery for which Devereux is vicariously liable.

288.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Brandon by its staff because appropriately restraining Plaintiff—and ensuring she is not sexually abused—falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate *appropriate* restraint and supervision to protect the student, their peers and/or staff from harm.

289.    Further, Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Brandon by its staff because its employees were acting within the scope of their employment.

290.    As a result of the assault and battery against Plaintiff Brandon for which Devereux is vicariously liable, Plaintiff Brandon suffered severe and grievous physical and emotional injuries. These injuries will continue to harm Plaintiff Brandon for the rest of her life.

## COUNT XVII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

291.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

292.     Devereux's negligent acts and omissions constitute the negligent infliction of emotional distress.

293.     Devereux acted negligently towards each Plaintiff, as described above.

294.     This negligent conduct created an unreasonable risk of physical harm, which caused Plaintiffs to be in fear of their own safety.

295.     Devereux's negligence either placed Plaintiffs in the zone of danger of physical impact or injury or resulted in Plaintiffs suffering actual injury.

296.     Plaintiffs suffered emotional distress as a result of Devereux's negligent conduct. This resulted in physical consequences and/or long-continued emotional disturbance, as described above.

297.     Devereux's conduct was the foreseeable cause of these damages.

298.     Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

## COUNT XVIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

299.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

300.     Devereux's actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Its conduct goes beyond the possible bounds of decency, and Devereux acted with the reckless disregard of the probability that Plaintiffs would suffer emotional distress as a result.

301.     Devereux's conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiffs. This distress was of such an intensity that no reasonable person should be expected to endure it.

302.     Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

303.     By permitting a culture of systematic physical, emotional, and sexual abuse at Devereux facilities, Devereux caused Plaintiffs to suffer, among other things, appalling and deplorable acts of physical, sexual, and/or emotional abuse, and the resulting pain, suffering, humiliation, grief, shame, disgust, anxiety, nervousness, shock, distrust, and loss of enjoyment of life. Plaintiffs will continue to suffer from these enduring harms, and have incurred and will continue to incur lost earnings, lost earning capacity, and expenses for psychological treatments and counseling.

**COUNT XIX**
**BREACH OF FIDUCIARY DUTY**

304.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

305.     Devereux, as a service provider for youth with disabilities and advanced behavioral and mental health needs, owes a fiduciary duty to act in the best interests of the youth they serve. When a child is placed in a Devereux facility, Devereux assumes the fiduciary duty to ensure that the child receives appropriate care and is safe from foreseeable harms.

306.     By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in Devereux programs, inadequately training and supervising Direct Support Professionals, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiffs' wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, Devereux has breached its fiduciary duty towards Plaintiffs.

307.   Plaintiffs were thereby harmed by Defendant's breach of this fiduciary duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment on their behalf and against Devereux, and further grant the following relief:

A.   Award Plaintiffs compensatory damages, punitive damages, pain and suffering, and any other relief to which they are entitled under the law;

B.   Award Plaintiffs prejudgment interest, costs and attorneys' fees; and

C.   Award to the Plaintiffs such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs respectfully request a trial by jury as to all matters so triable.

Dated: December 27, 2023

 /s/ Joseph G. Sauder
Joseph G. Sauder
Joseph B. Kenney
Juliette T. Mogenson
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: (610) 200-0580
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
jbk@sstriallawyers.com
jtm@sstriallawyers.com

Annika K. Martin (*pro hac vice forthcoming*)
Jessica Moldovan (*pro hac vice forthcoming*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Phone: (212) 355-9500
Facsimile: (212) 355-9592
akmartin@lchb.com
jmoldovan@lchb.com

Kelly Dermody (*pro hac vice forthcoming*)
Phong-Chau Nguyen (*pro hac vice forthcoming*)
Caitlin Nelson (*pro hac vice forthcoming*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Phone: (415) 956-1000
kdermody@lchb.com
pgnguyen@lchb.com
cwoods@lchb.com

Mark Chalos (*pro hac vice forthcoming*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
222 2nd Ave, Suite 1640
Nashville, TN 37201
Phone: (615) 313-9000
Facsimile: (615) 313-9965
mchalos@lchb.com